Antonio L. Cortés, SBN: 142356
SMITH DOLLAR PC
Attorneys at Law
404 Mendocino Avenue, Second Floor
Santa Rosa, California 95401
Telephone: (707) 522-1100
Facsimile: (707) 522-1101

Attorneys for Plaintiff
YUTAKA M. GIBBONS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUTAKA M. GIBBONS,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN SERVICES CORP., EQUIFAX, INC., and TRANS UNION CORP.,<br><br>Defendants. | CASE NO.: 8:15-cv-954<br><br>COMPLAINT FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT; VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT; NEGLIGENT CREDIT REPORTING; AND FRAUD |

Plaintiff YUTAKA M. GIBBONS ("Mr. Gibbons") brings this action against Defendants EXPERIAN, EQUIFAX, and TRANS UNION and in support thereof states and alleges as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff is a citizen of the Republic of Palau and resides in the State of Koror, Republic of Palau.

2. Defendant Experian Services Corp. ("Experian") is a corporation incorporated in the State of Delaware with its principal place of business in the City of Costa Mesa, State of California, in the business of providing consumer credit reports to lenders and other entities doing business in all States, Territories, and Protectorates of the United States.

3. Defendant Equifax, Inc. ("Equifax") is a corporation incorporated in the State of Georgia, with its principal place of business in the State of Georgia, in the business of providing consumer credit reports to lenders and other entities doing business in all States, Territories, and Protectorates of the United States.





4. Defendant TransUnion Corp. ("TransUnion") is a corporation incorporated in the State of Delaware, with its principal place of business in the State of Illinois, in the business of providing consumer credit reports to lenders and other entities doing business in all States, Territories, and Protectorates of the United States.

5. This action is brought for penalties and damages due to violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* and violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* and Regulation "B" of the Federal Reserve Board, 12 C.F.R. Part 202.

6. Jurisdiction is conferred on this Court by the Fair Credit Reporting Act, 15 U.S.C. § 1681p, by the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(f), and by 28 U.S.C. § 1337.

**CLAIM FOR RELIEF**

7. At all relevant times, each Defendant was a Consumer Reporting Agency within the meaning of 15 U.S.C. § 1681a(f).

8. At all relevant times, Plaintiff was a veteran of the United States Army, a beneficiary of the United States Social Security Administration holding a United States Social Security Number ("U.S. Social Security Number"), and a beneficiary of the Republic of Palau Social Security Retirement Fund holding a Palau Social Security Number ("Palau Social Security Number").

9. In or around May 2014, Plaintiff applied to the Bank of Hawaii for credit. Bank of Hawaii was a lender that had previously extended him credit.

10. On or about July 9, 2014, Bank of Hawaii refused to extend credit to Plaintiff based on a credit report issued by Equifax that Plaintiff was "deceased." It stated that it would refuse to extend credit to Plaintiff until such time as Plaintiff could prevail upon Equifax to cease reporting Plaintiff as "deceased."

11. Plaintiff attempted to resolve the issue of Equifax's reporting him as "deceased" with the aid of his staff in Palau, without resorting to hiring legal counsel, but Defendants were unwilling to resolve the "deceased" report in response to those efforts. Those efforts therefore culminated in a second refusal by Bank of Hawaii to extend credit to Plaintiff on August 5, 2014 based on the credit report of Equifax.

12. Unable to resolve the "deceased" report without counsel, Plaintiff retained counsel for that purpose in late August 2014.

13. On or about September 29, 2014, Plaintiff, through counsel, sent a request to Equifax, by U.S. Mail, certified, requesting:

a. Deletion, pursuant to 15 U.S.C. § 1681i(a)(1)(A), of any report in any way indicating that Plaintiff might be deceased;

b. Reinvestigation of whether Plaintiff was deceased, and a report, within 5 days, pursuant to 15 U.S.C. § 1681i(a)(6)(A)(ii), as to the results of the reinvestigation and the actions taken with respect to the erroneous report of Plaintiff's death; and

c. Provision, pursuant to 15 U.S.C. § 1681g(a)(1), of all information in Plaintiff's credit file related to the erroneous credit report that he was deceased, including, but not limited to, the source of that reported information.

14. Enclosed with those requests was all identification required by 15 U.S.C. § 1681h(a)(1), attached to Plaintiff's declaration signed by Plaintiff in person before the ranking officer of the Embassy of the United States of America in the Republic of Palau and authenticated by him upon his personal knowledge.

15. Accompanying those requests were affidavits of officials of the government of the Republic of Palau and other Palauan dignitaries, all properly authenticated, all stating that they personally knew Plaintiff to not be deceased.

16. Accompanying that letter was Plaintiff's September 9, 2014 authorization appointing the attorney who signed that letter and his law firm as Plaintiff's representatives to obtain information concerning his credit from Defendants, to request credit reports on Plaintiff's behalf, and to act on Plaintiff's behalf in any other way to review and correct reports concerning Plaintiff's credit.

17. Also on or about September 30, 2014, Plaintiff, through his attorneys, sent another letter to TransUnion making the same requests and enclosing the same identifications, authentication, affidavits, and authorizations.



18. Equifax's terse response, on October 10, 2014, failed to provide any of the requested information except the naked statement that "consumer does not reporting [sic] as deceased on the Equifax credit file." Equifax's response failed to respond to Plaintiff's request that it delete any such report and failed to state whether a prior report had been deleted, as represented by the Bank of Hawaii, despite the requirement of 15 U.S.C. § 1681i(a)(1)(A) that it do so. Equifax's response failed to respond to Plaintiff's request, pursuant to 15 U.S.C. § 1681i(a)(6)(A)(ii), as to the results of the required reinvestigation and the actions taken with respect to the erroneous report of Plaintiff's death. Equifax's response failed to respond to Plaintiff's request that it provide information concerning its prior erroneous report to Bank of Hawaii that had resulted in the denial of credit to Plaintiff, or the source of the erroneous information in that report, despite the requirement of 15 U.S.C. § 1681g(a)(1) that it do so.

19. On or about October 16, 2014, TransUnion responded with a letter to Plaintiff's attorney stating that it would supply the requested information directly to Plaintiff despite his written request that TransUnion provide it directly to his attorney. TransUnion, however, did not forward any of the requested information directly to Plaintiff, despite the requirements of 15 U.S.C. §§ 1681i(a)(1)(A), 1681i(a)(6)(A)(ii), and 1681g(a)(1) that it do so, and despite its false representation to Plaintiff's attorney that it had done so.

20. On or about October 20, 2014, Plaintiff, through counsel, sent a letter to Experian requesting the same information he had requested from Equifax and TransUnion, and enclosing the same authorization, identification, and authentication of documents he had sent Equifax and TransUnion.

21. On October 30, 2014, Experian sent a letter to Plaintiff's counsel stating that it was "in the process of removing the disputed deceased notation from two FIA CSNA accounts on Mr. Gibbon's [sic] credit report," and stating that "The discrepancy may arise because Mr. Gibbon's [sic] Palau Social Security number appears to match a Social Security number issued by the United States Social Security Administration" and that the U.S. Social Security number "is correctly reported as belonging to a deceased individual in the United States." Experian, however, did not forward the rest of the requested information, such as (but not limited to) the identity of the



SmithDollar
A PROFESSIONAL CORPORATION

individual or entity that caused the "deceased" notation to be put on Plaintiff's credit report in the first place, despite the requirements of 15 U.S.C. §§ 1681i(a)(1)(A), 1681i(a)(6)(A)(ii), and 1681g(a)(1) that it do so. On that same date, Experian mailed to Plaintiff a copy of what appears to be his credit report, preceded by a claim that "this summary shows the revision(s) made to your credit file as a result of our processing your dispute." That summary does not, in fact, show any such revisions.

22. Later on October 30, 2014, Plaintiff, through counsel, sent a follow-up letter to Experian, via certified mail and fax, along with sufficient identification, authorization, and authenticating documents, requesting the still un-provided information, and requesting additional information. This letter provided authority supporting Plaintiff's right to have this information transmitted directly to his attorney authorized in writing to receive it, and requested either that the information be sent directly to Plaintiff's counsel or authority allowing Experian to ignore his request that it be sent directly to counsel. The information requested in Plaintiff's October 30, 2014 letter included, among other things:

a. Deletion, pursuant to 15 U.S.C. § 1681i(a)(1)(A), of any report in any way indicating that Plaintiff might be deceased;

b. A clear statement pursuant to 15 U.S.C. § 1681i(a)(6)(A), of whether or not TransUnion had removed any such report;

c. All information in Plaintiff's credit file related to any report that Mr. Gibbons was deceased;

d. A copy of Mr. Plaintiff's entire credit file as required by 15 U.S.C. § 1681g(a)(1)(A);

e. Identification of all persons who had procured Plaintiff's credit report during the last year as required by 15 U.S.C. § 1681g(a)(1)(c);

f. The identity of each person that has procured a copy of Plaintiff's credit report at any time between October 30, 2013 and the date you provide that information as required by 15 U.S.C. § 1681g(a)(1)(C);





g. A record of all inquiries received by TransUnion during the 1-year period preceding this request that identified Plaintiff in connection with a credit or insurance transaction that was not initiated by Mr. Gibbons required by 15 U.S.C. § 1681g(a)(5); and

h. A copy of Plaintiff's current credit score and a copy of his updated credit report.

23. On October 31, 2014, Experian sent a letter to Plaintiff's counsel stating that "The Experian credit profile report states that the U.S. Social Security Administration has recorded as deceased the U.S. Social Security number that happens to match Mr. Gibbon's [sic] Palau Social Security number. The report does not state that Mr. Gibbons is deceased." The letter did not contain the requested clear statement indicating whether that had been removed from the Experian credit profile report as required by 15 U.S.C. § 1681i(a)(6)(A). The letter did not provide any information regarding how that statement came to be on Mr. Gibbons' credit report, despite the requirements of 15 U.S.C. § 1681g(a)(1)(A). The letter did not enclose a copy of Mr. Gibbons' entire credit file as required by 15 U.S.C. § 1681g(a)(1)(A). The letter indicated that Experian would not provide Mr. Gibbons' credit score without payment.

24. On October 31, 2014, Plaintiff, through counsel, sent a second letter to TransUnion repeating Plaintiff's request for the information not provided by TransUnion in response to Plaintiff's September 30, 2014 letter, and requesting additional information from TransUnion, including:

a. A clear statement of whether or not TransUnion had removed any report indicating Plaintiff might be deceased, pursuant to 15 U.S.C. § 1681i(a)(6)(A);

b. All information in Mr. Gibbons' credit file related to any report that Mr. Gibbons was deceased "without further delay;"

c. A copy of Mr. Gibbons' entire credit file, as required by 15 U.S.C. § 1681g(a)(1)(A);

d. The identity of each person that had procured a copy of Mr. Gibbons' credit report at any time between October 30, 2013 and the date TransUnion had provided that information, as required by 15 U.S.C. § 1681g(a)(1)(C);



SmithDollar A PROFESSIONAL CORPORATION

e. A record of all inquiries received by TransUnion during the 1-year period preceding this request that identified Mr. Gibbons in connection with a credit or insurance transaction that was not initiated by Mr. Gibbons, as required by 15 U.S.C. § 1681g(a)(5); and

f. A copy of Mr. Gibbons' current TransUnion credit score and a copy of his updated credit report.

25. On November 2, 2014, Equifax sent a letter directly to Plaintiff, without a copy to his attorney, demanding a fee for providing his credit file and/or score, in violation of 15 U.S.C. §§ 1681j(a)(1)(A), 1681c-1(a)(2), & 1681i(a)(1)(A). That letter did not state that reports indicating that Plaintiff might be "deceased" had been removed from his credit report as required by 15 U.S.C. § 1681i(a)(6)(A). The letter did not provide any information regarding how statements indicating Plaintiff might be deceased came to be on his credit report, despite the requirements of 15 U.S.C. § 1681g(a)(1)(A). The letter did not enclose a copy of Mr. Gibbons' entire credit file as required by 15 U.S.C. § 1681g(a)(1)(A).

26. On November 4, 2014, Equifax sent a letter to Plaintiff's attorney stating that Plaintiff's attorney was not "currently reporting as deceased."

27. On November 5, 2015, Bank of Hawaii again declined to extend credit to Plaintiff due to persisting credit reports indicating that Plaintiff was "deceased."

28. On November 11, 2014, TransUnion sent a letter to Plaintiff, through counsel, responding to Plaintiff's September 30 2014 and October 31, 2014 requests by stating that TransUnion offers credit scores to consumers as an attachment to their credit reports, and demanding prior payment for doing so. That letter failed to admit or deny that TransUnion had included statements in prior reports indicating that Plaintiff might be deceased, failed to provide a clear statement that any such statement had been removed from TransUnion credit files for Plaintiff, failed to provide any information regarding how any statement indicating Plaintiff might be deceased was put into TransUnion's credit files for Plaintiff, and failed to provide any other information Plaintiff had previously requested from TransUnion.

29. On December 12, 2014, Plaintiff, through counsel, sent a final demand to each of Equifax, TransUnion, and Experian, requesting all previously-un-provided information due


SmithDollar
A PROFESSIONAL CORPORATION

Plaintiff under the Fair Credit Reporting Act, and demanding that, in anticipation of litigation, Equifax, TransUnion, and Experian preserve, and prevent destruction of, documentation concerning their credit files and reports regarding Plaintiff.

30. On December 15, 2014, Experian sent a letter to Plaintiff's counsel claiming the right to persist in reporting to credit providers that a social security number associated with Plaintiff is the same as the social security number the U.S. Social Security Administration issued to a person now deceased and taking the position that it is Plaintiff's burden to explain this to any credit providers.

31. On January 7, 2015, TransUnion sent a letter to Plaintiff's counsel refusing to provide any of the requested information on the ground that Plaintiff had not adequately identified himself as the holder of his Palau Social Security Number and/or his U.S. Social Security Number, despite his having provided that identification with each and every prior communication to TransUnion. On the same date, however, TransUnion sent a credit report directly to Plaintiff, in tacit admission that he had in fact adequately identified himself, through the ranking officer of the United States Embassy in Palau, as the holder of those social security numbers. That credit report, however, failed to provide any of the other information in violation of provisions of the Fair Credit Reporting Act such as 15 U.S.C. §§ 1681i(a)(1)(A), 1681i(a)(6)(A)(ii), and 1681g(a)(1).

## **FIRST CAUSE OF ACTION**

Fair Credit Reporting Act

32. Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs 1 through 31 as if fully set forth herein.

33. Each Defendant has violated the Fair Credit Reporting Act as set forth above.

34. A reasonable credit reporting agency would know that any statement in a consumer's credit file or credit report to the effect that the consumer was associated with the social security number of a deceased person could foreseeably lead to the unfair denial of credit to that consumer.

//

//



SmithDollar
A PROFESSIONAL CORPORATION

35. Equifax's and Experian's unreasonable refusals to remove reports associating Plaintiff with a deceased person have resulted in repeated denials of credit to Plaintiff, and, on information and belief, TransUnion's unreasonable refusals have also done so.

36. All Defendants have repeatedly refused to provide information to Plaintiff they are required to provide him by provisions of the Fair Credit Reporting Act, including but not limited to provisions of the Fair Credit Reporting Act those of 15 U.S.C. §§ 1681i(a)(1)(A), 1681i(a)(6)(A)(ii), and 1681g(a)(1).

37. Plaintiff has been injured by Defendants' violations of the Fair Credit Reporting Act in that he has repeatedly been denied credit, has incurred attorneys' fees, and has suffered the loss of business advantages out of concern that Defendants' statements that Plaintiff may be using the identity of a deceased person could lead to the physical detention of his person when trying to return from the United States to his own country.

38. Plaintiff is entitled to injunctive relief requiring Defendants to cease making any statement to any potential creditor or any other person in any way linking Plaintiff to any deceased person, and to provide the requested free credit reports and scores as mandated by Congress.

39. Accordingly, Plaintiff prays for the relief requested below.

## SECOND CAUSE OF ACTION

Equal Credit Opportunity Act and Regulation B

40. Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs 1 through 39 as if fully set forth herein.

41. Each Defendant is a person who, in the ordinary course of business, regularly arranges for the extension, renewal, or continuation of credit.

42. Experian and Equifax, and, on information and belief, TransUnion, have reported, and/or continue to report, that Plaintiff's credit is associated with a U.S. Social Security Number belonging to a deceased person.

43. Experian and Equifax, and, on information and belief, TransUnion, have participated in the extension of credit to Plaintiff by reporting to lenders that he is deceased and/or that his credit history is based on a social security number belonging to a deceased person.



SmithDollar
A PROFESSIONAL CORPORATION

44. On information and belief, each Defendant, in preparing its credit reports, provides less favorable treatment to persons of Palauan national origin, such as Plaintiff, who are seeking credit, by adding to credit reports of persons of Palauan origin whether or not those persons are associated with U.S. Social Security Numbers of deceased persons, while at the same time not indicating in reports belonging to persons of non-Palauan origin whether those persons are associated with the Palauan Social Security numbers of deceased Palauan persons.

45. Plaintiff is entitled to receive from and against each Defendant who has, at any time during the five (5) years preceding the filing of this Complaint, reported him to be associated with the U.S. Social Security Number of a deceased person:

a. Actual damages according to proof, pursuant to 15 U.S.C. § 1691e(a);

b. Mandatory punitive damages not exceeding $10,000, pursuant to 15 U.S.C. § 1691e(b);

c. An injunction prohibiting each Defendant from reporting Plaintiff to be associated with the U.S. Social Security Number of a deceased person, pursuant to 15 U.S.C. § 1691e(c); and

d. Recovery of Plaintiff's attorneys' fees and costs incurred in all aspects of this action including fees incurred for Plaintiff's pre-filing attempts to obtain relief, pursuant to 15 U.S.C. § 1691e(d).

46. Accordingly, Plaintiff prays for the relief requested below.

**THIRD CAUSE OF ACTION**

Negligent Credit Reporting

47. Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs 1 through 46 as if fully set forth herein.

48. Defendants each had a legal duty to correctly report Plaintiff's credit information, without implying that he might be deceased, and without suggesting that he might be using a deceased person's social security number.

49. Defendants each had a legal duty to use reasonable care in providing information to Plaintiff concerning the reports on his credit prepared by Defendants.


SmithDollar
A PROFESSIONAL CORPORATION

50. Defendants breached those duties by including references in Plaintiff's credit reports to deceased persons they knew or should have known were not associated with Plaintiff or his creditworthiness in any way, and by failing to take reasonable steps to provide information to Plaintiff concerning Defendants' prior reports that affected or might have affected his credit.

51. Defendants knew or should have known that any references to deceased persons in Plaintiff's credit reports could lead to injury such as the denial of credit to Plaintiff. Defendants knew or should have known that failing to take reasonable steps to provide information to Plaintiff concerning Defendants' would result in financial injury to Plaintiff. A reasonable person would have foreseen the possibility of those injuries to Plaintiff.

52. Plaintiff has been injured by Defendants' negligent credit reporting in that he has repeatedly been denied credit, he has incurred attorneys' fees, he has suffered the loss of business advantages out of concern that Defendants' statements indicating he was be using the identity of a deceased person could lead to his detention when trying to return from the United States to his own country, and he has been reasonably reluctant to exercise his right to travel to and from the United States and its Territories.

53. Accordingly, Plaintiff prays for the relief requested below.

## **FOURTH CAUSE OF ACTION**

Fraud

54. Plaintiff repeats and re-alleges each and every allegation in the foregoing paragraphs 1 through 53 as if fully set forth herein.

55. Any statement by any Defendant that Plaintiff's credit is associated with a deceased person's U.S. Social Security Number, or that the "file social security number" was used in a death benefits claim for a deceased person, is, when included in the credit file of a living person, a half-truth constituting an affirmative misrepresentation that is false and misleading if made by a Credit Reporting Agency in a credit report concerning a living person.

56. Equifax made such affirmative misrepresentations to the Bank of Hawaii when reporting on Plaintiff's credit applications in or around July and November 2014.



SmithDollar
A PROFESSIONAL CORPORATION

57. On information and belief, based on the October 30, 2014 written contention by Experian that it was entitled to "correctly" make such affirmative misrepresentations in Plaintiff's credit report, and based on a written statement by TransUnion on November 11, 2014, Experian and/or TransUnion may have made, and may be continuing to make, affirmative misrepresentations to the effect that Plaintiff is associated with a deceased person's U.S. Social Security number.

58. Each Defendant who included the affirmative misrepresentation in Plaintiff's credit report concerning a deceased person's social security number knew, from information it received from the U.S. Social Security Administration, that the deceased person was not Plaintiff.

59. Each Defendant who included the affirmative misrepresentation in Plaintiff's credit report concerning a deceased person's social security number knew that this affirmative misrepresentation would likely be negatively considered by a recipient deciding whether to extend credit to Plaintiff.

60. Each Defendant who included the affirmative misrepresentation in Plaintiff's credit report concerning a deceased person's social security number intentionally did so in order that this affirmative misrepresentation would be negatively considered by one or more recipient deciding whether to extend credit to Plaintiff.

61. Due to the proliferation of identity theft in recent years, each Defendant knew that Bank of Hawaii and other credit providers might be able to justify a denial of credit to Plaintiff on the basis of any affirmative misrepresentation associating Plaintiff's social security number with a deceased person.

62. Bank of Hawaii did in fact rely on Equifax's affirmative misrepresentation to deny Plaintiff credit in July 2014, and again in November 2014.

63. Equifax's continuing to make the affirmative misrepresentation that Plaintiff's credit was associated with a deceased person's social security number was malicious, as evidenced by its continuing to make that report to Bank of Hawaii after receiving Plaintiff's September 29, 2014 and October 30, 2014 letters and the documentation included with them unequivocally demonstrating that Plaintiff yet lives.





64. Plaintiff has been injured by incurring legal expenses in attempting to correct Equifax's reports indicating he is "deceased," by being repeatedly denied credit, by suffering loss of business advantages out of concern that Defendants' statements linking him to a deceased person could lead to his detention when returning from the United States to his own country, and by the resultant infringement of his right to travel.

65. Accordingly, Plaintiff prays for the relief requested below.

WHEREFORE, plaintiff prays judgment against defendants, as follows:

1. For preliminary and permanent injunctive relief enjoining all Defendants from publishing any statement that claims or implies that Plaintiff is either deceased or is using another person's social security number, or that Plaintiff or his credit is associated in any way with a deceased person or a deceased person's social security number.

2. For actual damages to be proven at trial to exceed $75,000;

3. For mandatory punitive damages from each Defendant in an amount not to exceed $10,000 from each Defendant for each violation of the Equal Credit Opportunity Act;

4. For additional punitive damages according to proof for Defendants' Fraud and for their persistent violation of the Fair Credit Reporting Act;

5. For costs of suit herein incurred;

6. For Plaintiff's attorneys' fees incurred in his pre-litigation attempts to request Defendants to comply with their duties under the Fair Credit Reporting Act;

7. For Plaintiff's attorneys' fees incurred in prosecuting this action; and

8. For such other and further relief as this honorable Court may just and deem proper.

Dated: June 16, 2015

SMITH DOLLAR PC

By s/ Antonio L. Cortes
Antonio L. Cortes
Attorneys for Yutaka M. Gibbons









SmithDollar
A PROFESSIONAL CORPORATION